IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAQUENTIN BANKS,

                Plaintiff,                    OPINION AND ORDER

v.

                                                    18-cv-52-wmc

DAVID MAHONEY,

                Defendants.

In this lawsuit, *pro se* plaintiff LaQuentin Banks is proceeding against Sheriff David Mahoney, claiming that the level of lead in the water at the Dane County Jail violates his constitutional rights. Defendant filed a motion for summary judgment on the ground that Banks failed to exhaust available administrative remedies with respect to his claim in compliance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Banks filed an opposition brief arguing that he submitted multiple grievances about the lead in the water, but they were lost. On October 23, 2018, the court directed Banks to submit a declaration providing specific details about his efforts to exhaust his administrative remedies with respect to his lead contamination claim. (Dkt. #23.) On November 8, 2018, Banks submitted a signed and dated document describing those efforts, which the court will accept as his declaration. (Dkt. #24.) For the reasons that follow briefly, the court will deny defendant's motion, and direct defendant to notify the court whether he wishes the court to conduct an evidentiary hearing under *Pavey v. Conley*, 528 F.3d 494, 496-98 (7th Cir. 2008), to resolve the exhaustion defense.

OPINION

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally speaking, a prisoner must "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

During the relevant time period, the Dane County Jail had policies and procedures in place that governed inmate grievances. Policy 607.07 lays out the proper way for inmates to file grievances. Relevant here, subsection (I)(H) of 607.07 provides that inmates may submit a grievance by: (1) submitting it confidentially in an envelope marked "grievance"; (2) handing the grievance directly to a staff member; or (3) sending the grievance through the U.S. mail at the inmate's expense. (Dkt. #18-1, at 3.) It further provides that grievances submitted to a staff member will be "forwarded through inter-department mail." (*Id.*) Additionally, subsection (I)(G) permits inmates to submit group grievances if they each print their name and booking number on the form, as well as clearly designate a spokesperson on the form. (*Id.*) Finally, once a grievance is received, it is assigned a grievance number and an investigating supervisor for review.

The court previously reviewed defendant's record of Bank's grievance history at the jail, which showed that Banks had only filed two grievances: (1) No. 21547, filed May 11, 2016, complaining that he believed his bunk assignment to be racist; and (2) No. 26014, filed March 19, 2018, complaining about bugs, dirt and dust in his cell, and a lack of hot water in his cell

2

for two months. (Ex. B (dkt. #18-2), at 1-4.) Both of his grievances were denied, and Banks appealed neither result. In his recently filed declaration, however, Banks avers that, in addition to those grievances noted in the jail's records, he submitted two more individual grievances and three group grievances, all related to lead in the water, but only ever received a response to his March 19, 2018, grievance.

As to his individual grievances in particular, Banks avers that on November 12, 2017, he filled out a grievance form complaining about lead in the water and asking whether he might be able to buy bottled water. Banks claims he placed the grievance form in the cell door in the cell block, and a deputy with the last name Jenning picked up the outgoing mail and grievance forms from his cell block during the third shift. On December 2, 2017, after Banks had received no response to his November 12 grievance, Banks further claims he filled out a second grievance form bringing the same complaints as the November 12 grievance, and again placed the grievance form in the cell door. Banks fell asleep before his grievance was picked up, but when he woke up the next day, he maintains that his grievance was gone, so he believes it was picked up by jail staff. Banks never got a response to that grievance either.

As for his alleged group grievances, the first group grievance in which Banks claims he joined was submitted by another inmate, Brandon Crockett, at some point in November 2017. Next, on January 22, 2018, Banks claims to have joined a group grievance about lead in the water that another inmate, Hubert Wilkin, turned in. Finally, Banks claims that in late March or early April of 2018, he joined yet another group grievance filed by Joenellie Martinez about lead in the water and other conditions at the jail. Banks also claims he received no follow up on any of these grievances as well.

3

If accepted as true, Banks' representations permit a reasonable inference that he attempted to bring *several* grievances about lead in the water, but none of them actually made it into the jail's grievance system. With respect to his individual grievances, in particular, while Banks may not have handed them directly to a staff member, defendant has not suggested that jail policy precluded inmates from submitting grievances to a staff member by leaving them at the cell door, which appears to have been the designated place for jail staff to pick up outgoing mail and grievances. Given that it is *defendant's* burden to establish that Banks failed to follow the exhaustion procedures, Banks' apparent failure to hand his grievances directly to a staff member does not prove that he failed to exhaust. *See Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("It [is not plaintiff's] burden to establish that the grievance process was unavailable; it [is the defendants'] burden to show that [plaintiff] did not exhaust available remedies."). In any event, at least with respect to the November 12 grievance, Banks specifically identified a staff member (Jenning) who actually did pick up his grievance. Thus, again taking Banks' representations as true, it would be reasonable to conclude that while Banks took the steps necessary to initiate the grievance process on at least one and possibly two occasions, none of them were accepted into the jail's grievance system through no fault of his own.

As previously noted, if it is true that jail staff mishandled his grievances about lead in the water, then Banks may be excused from further exhaustion under the jail's policy because the administrative remedies were not actually available to him with respect to that grievance. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Dole v. Chandler*, 438 F.3d 804, 812 (7th Cir. 2006) (defendant could not succeed on exhaustion defense where plaintiff mailed his appeal but it was never received). Since Banks' averments that he submitted grievances about lead in the water (both individually and as a part of a group grievance) create material factual

4

disputes regarding the availability of the grievance process, this court must deny defendant's motion for summary judgment.

If defendant wishes to proceed in his exhaustion defense, therefore, the court will need to set an evidentiary hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and likely strike the trial schedule, since the dispositive motion deadline is January 22, 2019. If defendant prefers, instead, to maintain the trial schedule and withdraw the exhaustion defense, then the current schedule will stand. Accordingly, defendant will be directed to notify the court which course of action he intends to pursue.

ORDER

IT IS ORDERED that:

1. Defendant's motion for summary judgment (dkt. #16) is DENIED.
2. Defendant is DIRECTED to notify the court by December 17, **2018,** whether the court should set a hearing under *Pavey v. Conley*, 528 F.3d 494 (7th Cir. 2008).

Entered this 6th day of December, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge